Burman Company v. Commissioner.
Burman Co. v. Commissioner
Docket No. 81724.
United States Tax Court
T.C. Memo 1961-293; 1961 Tax Ct. Memo LEXIS 58; 20 T.C.M. (CCH) 1524; T.C.M. (RIA) 61293; October 24, 1961
F. W. Gaasedelen, Esq., for the petitioner. Merrill R. Talpers, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent determined deficiencies in petitioner's income tax for the years and in the amounts as follows: Year
Deficiency
1952
$5,776.67
1953
1,532.74
1955
4,205.18
The sole question for decision is whether petitioner is entitled to deduct, as an ordinary and necessary expense, *59 "laundry tray mold rent." Findings of Fact Some of the facts have been stipulated and are hereby found as stipulated. The Burman Company (hereinafter referred to as petitioner) is a corporation organized under the laws of Minnesota. Petitioner filed corporate income tax returns for the calendar years 1952, 1953, 1954 and 1955 with the district director of internal revenue, St. Paul, Minnesota. For the years in question, petitioner reported its income and expenses on the accrual method of accounting. From January 1, 1942, until January 1, 1947, petitioner's business was operated by Olof S. Burman (hereinafter referred to as Olof), who died April 26, 1954, as a sole proprietorship. Beginning on January 1, 1947, and continuing until April 1, 1949, the business was operated as a partnership between Olof and his son, Gordon S. Burman (hereinafter referred to as Gordon), under the name and style of Burman Company. In 1934, a patent for a cement laundry tub was issued to Olof. The patent and certain laundry tray molds (used to make laundry tubs) involved herein were held in the name of the partnership. Olof did not receive special compensation from the partnership for the use of the *60 patent on laundry tray molds. During the existence of the partnership, Olof received 87 1/2 percent of the partnership profits, and Gordon received 12 1/2 percent. The books of the partnership indicated that as of April 1, 1949, the asset accounts, Laundry Tray Equipment (which was the account description for the laundry tray molds) and Wash Board Dies (used in making wash boards for the tubs) were fully depreciated, resulting in no remaining basis for such assets; and that the account, Punch Press and Laundry Stand Dies (used in the making of the stand for the tubs) had a depreciated basis of $157.50 as of the foregoing date. Since April 1, 1949, petitioner has operated in the corporate form. From the date that petitioner was incorporated until his death, Olof owned 94.29 percent of petitioner's stock and thereafter his estate owned 93.08 percent. The following is a copy of the bill of sale entered into between Olof and the petitioner: THIS INDENTURE made this 23rd day of April, 1949, by and between Olof S. Burman, party of the first part, and Burman Company, a corporation organized under the laws of the State of Minnesota, party of the second part. WITNESSETH: WHEREAS, party *61 of the first part is desirous to have party of the second part take over and operate the plumbing business in which he has been engaged and is further desirous to transfer, assign and set over to party of the second part some of his business property, both tangible and intangible as well as certain rights, contracts and interests and; WHEREAS, party of the second part is desirous of accepting said properties, rights and contracts and to assume certain business obligations of the party of the first part and to issue stock to party of the first part for such assets; NOW THEREFORE, to carry out the intentions and agreement between the party of the first part and the party of the second part, and in consideration that the party of the second part expressly assume and agree to pay certain debts heretofore contracted by party of the first part as set out in Schedule "B" hereto attached and made a part hereof; and further agrees to carry into effect and fully perform all contracts and agreements made and entered into by party of the first part with reference to said assets and to hold harmless and free from all liability said party of the first part by reason of any such contract, agreement *62 or obligation, and in further consideration that party of the second part issues 1750 shares of its Class A Common Stock to party of the first part, the said party of the first part does grant, bargain, sell, convey, assign, set over and transfer to said party of the second part and its successors, all of his rights and interests to and in the property listed in Schedule "A" hereto attached and made a part hereof, to have and to hold said property to the party of the second part, its successors and assigns forever. * * *
SCHEDULE "A"
Value on Books
Property of Olof S. Burman
of Burman
dba Burman Company
Company
1. Cash on hand
$ 120.00
2. Accounts receivable as per the
books of business as of April
1, 1949
41,694.22
3. Inventories as of April 1, 1949
187,872.12
4. Machinery and equipment as
per books as of April 1, 1949 [1]
3,010.62
5. Autos and Trucks as per books
as of April 1, 1949
8,419.08
6. Furniture and Fixtures as per
books as of April 1, 1949
699.51
7. Prepaid Insurance
1,077.12
8. Note Receivable A. J. O'Con-
ner
500.00
9. Deposit on Automobile
200.00
10. Advances - Salesmen's Travel
125.00
TOTAL
$243,717.67
*63 SCHEDULE "B"
(Liabilities Assumed by Corporation)
Liabilities of Olof S. Burman
Amount per
dba Burman Company
Books
1. Overdraft - Marquette National
Bank
$ 2,334.39
2. Note Payable - Marquette National
Bank
50,000.00
3. Accounts Payable - Trade
16,579.30
4. Commissions Payable
22.70
5. Accrued Social Security Taxes
339.34
6. Withheld Taxes
855.40
$70,131.13 At the present time and during the years in question, petitioner was engaged in manufacturing and selling laundry tubs bearing the Burman name and also wholesaling plumbing and heating supplies. In its Federal income tax returns, petitioner deducted the following expenses as "laundry tray mold rent:" 1953
$4,165
1954
5,164
1955
2,617 In his notice of deficiency, respondent stated that the foregoing amounts were being disallowed "because it has been determined that the amount in excess of $69.00 [per year] is not deductible under any provision of the Internal Revenue Code * * *." For the calendar year 1954, petitioner reported a net operating loss of $27,911.83 which it carried back to the year 1952. Based on this, respondent allowed petitioner a refund in the *64 amount of $10,912.80. When respondent subsequently disallowed certain other expenses in addition to the laundry tray mold rent, this reduced the amount allowable as a carryback to the year 1952; consequently a deficiency was assessed for 1952. The estate of Olof filed a Federal Estate Tax Return with the district director of internal revenue, St. Paul, Minnesota. In that return, an amount of $690 was reported as the fair market value of 23 laundry tray molds here involved. The valuation was as of April 26, 1954, the date of Olof's death. Petitioner did not pay laundry tray mold rentals to Olof or anyone else from April 1, 1949, the date of petitioner's incorporation, to December 31, 1951. There was no written agreement between petitioner and Olof, or anyone else, regarding the payment of laundry tray mold rents. The patent for the cement laundry tub expired in 1951. From the date of incorporation and through the years in issue, petitioner has never declared or paid a dividend. The laundry tray mold rents deducted in the years 1953, 1954, and 1955 in excess of that allowed by respondent do not constitute ordinary and necessary business expenses of the petitioner. Opinion Both *65 section 23(a)(1)(A) of the 1939 Code and section 162(a)(3) of the 1954 Code provide that "rentals or other payments required to be made as a condition to the continued use or possession of property to which the taxpayer has not taken or is not taking title or in which he has no equity" are deductible as ordinary and necessary business expenses. There is no evidence that petitioner and Olof or his estate entered into any contract or agreement, either written or oral, which required petitioner to pay a rental for the continued use or possession of the laundry tray molds. In addition, Olof's patent had expired in 1951, which meant that anyone could manufacture and sell these laundry tubs without the necessity of paying Olof or his estate any type of royalty or rental. The most that can be said for petitioner's position is that certain payments were apparently made by it, but this falls far short of proving petitioner's case that these payments were "required" to be made, since the payments could just as easily have been dividends in the guise of rent. [2] Nor has petitioner shown that the laundry tray molds were not property to which it had not or was not taking title or in which it *66 had no equity. Furthermore, there is no evidence that the payments in question were made for the "good will" of the business as petitioner seems to contend. However, even if there had been such a showing, the payments would not be deductible. Payments made to acquire good will are capital expenditures. Cf. section 1.263(a)-2(h), Income Tax Regs., 1954 Code. Nor is there any evidence that would support petitioner's contention that the payments were made for the use of the "Burman" name. Even if petitioner had met all the other provisions of the Code, the amount of the alleged "rent" was not reasonable. [3] Since petitioner has failed to sustain his burden of proof, respondent's determination is accordingly sustained. In order to give effect to matters settled by stipulation between the parties. Decision will be entered under Rule 50. Footnotes
1. The assets constituting the machinery and equipment as per books as of April 1, 1949, are as follows: ↩
Depreciated
Basis
Electric Hoist
$ 107.85
Punch Press and Laundry Stand
Dies
157.50
Equipment
2,843.03
Total
$3,108.38
Less Reserve for Depreciation
97.76
Machinery and Equipment
$3,010.62
2. As we have found, from the date of incorporation and through the years in issue, petitioner has never declared or paid a dividend. ↩
3. The molds had a purported fair market value of $690 and petitioner deducted $4,165, $5,164 and $2,617 in the years 1953, 1954 and 1955, respectively.↩